IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**LOYD WATERS**                                                                                               **PLAINTIFF**

**VS.**                                **CASE NO. 1:17CV00024 PSH**

**NANCY A. BERRYHILL, Acting Commissioner,**
    **Social Security Administration**                           **DEFENDANT**

**ORDER**

Plaintiff Loyd Waters ("Waters") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny his claim for Disability Insurance Benefits ("DIB"). Waters contends the Administrative Law Judge ("ALJ") erred in the following ways: (1) giving little weight to the opinion of Dr. Oberlander ("Oberlander"), Waters' treating physician; (2) erroneously assessing his residual functional capacity ("RFC"); and (3) performing an inadequate credibility evaluation. The parties ably summarized the medical records and the testimony given at the administrative hearing conducted on October 5, 2016. (Tr. 37-57). The Court has carefully reviewed the record to determine whether there is substantial evidence to support Berryhill's decision. 42 U.S.C. § 405(g).

*Administrative Hearing:* Waters, who was 48 years old at the time of the hearing, stated he last worked in April 2015 as a "yard jockey," which he described as moving 18- wheelers around a parking lot. (Tr. 40). Waters testified he quit the job because he could not use his hands and could not get in and out of the trucks. According to Waters, his fingers lock up "all the time." (Tr.

1

41). Waters stated he has arthritis in his hands, wrists, shoulders, and feet. He also stated that he would need a hip replacement soon. Waters testified that Oberlander diagnosed him with fibromyalgia about three to four years before the hearing, and that the effects of the fibromyalgia are "hard to explain" but are constant "("just all the time hurting"). (Tr. 42). Waters stated he takes Gabapentin for his fibromyalgia, and also takes Keppra, Allopurinol for gout, Meloxicam for inflammation, and Hydrocodone for pain. He was unsure if he experienced any side effects from the medications, in part because the side effects may be similar to the symptoms of fibromyalgia. Waters also testified to being able to "feel sound," feeling as if "bugs were crawling on me all the time," and feeling his hair moving when the wind blows. (Tr. 45). He also stated he had anxiety attacks, including one where he blacked out while driving two months prior to the hearing. He was taken to the hospital after the accident and tested and "everything was fine." (Tr. 51). The anxiety attacks, according to Waters, have been occurring for seven or eight years, and he has been to "doctor after doctor" for the problem, without a remedy. The only diagnosis from these doctors is "that my brain gets so full, it shuts down like a breaker box and comes back on." (Tr. 48). Waters stated the anxiety attacks, or spells, come on without warning. As for daily activities, Waters noted that his sister drives him to and from doctor's appointments, that he prepares his own microwaveable meals, he watches movies during the day, and does laundry once a month. He drives only when it is an emergency.

Stephanie Ford ("Ford"), a vocational expert, testified Waters could not perform any of his past relevant work, which included the jobs of semi-truck driver and position screw machine operator. The ALJ asked Ford to assume a worker of Waters' age, education, and experience, who could perform light work except that the worker could occasionally work overhead due to neck

issues, and could only occasionally stoop, kneel, crouch, or crawl due to lower back pain. Ford testified that such a worker could perform jobs, including the jobs of ticket seller and fast food worker. The ALJ, in a second hypothetical question posed to Ford, added the restrictions that the worker would be off task up to 20% of the workday and would miss three or more days of work in any given month on an unscheduled basis. Ford stated there would be no jobs available for such a worker. (Tr. 55-57).

*The ALJ's Decision:* In his December 2016 opinion, the ALJ determined the relevant time period under consideration was from the alleged onset date of April 1, 2015, through December 5, 2016, the date of the ALJ's opinion. The ALJ found Waters had the following severe impairments: degenerative disc disease, osteoarthritis, fibromyalgia, and obesity. The ALJ addressed other impairments, finding Waters has benign hypertension resulting in no symptoms which would limit his ability to work. The ALJ found no evidence that Waters had been diagnosed with arthritis in his hands. Rather, the ALJ found the medical evidence demonstrated normal grip strength in both hands, normal joint functioning, and no inflammation or redness in the joints. The only abnormality with Waters' hands was a finding that he has "trigger finger" on one finger on the right hand. The ALJ deemed this abnormality to be a non-severe medical impairment which would result in no more that minimal work limitations/restrictions. The ALJ found Waters received treatment for plantar fasciitis in 2013, but not afterwards, and determined this to be a non-severe medical impairment. Finally, the ALJ found no diagnosis of anxiety disorder and concluded this alleged impairment to be a non-medically determinable impairment.

The ALJ assessed Waters with the RFC to perform light work, except that he could only occasionally perform overhead reaching, stooping, kneeling, crouching, and/or crawling. Citing the

3

relevant factors for assessing credibility, the ALJ did not accept Waters' allegations at face value. The ALJ specifically addressed the opinion of Oberlander that Waters was disabled. The ALJ also considered the reports submitted by consultative examiners Dr. David Barnett ("Barnett"), an orthopedic physician, and Dr. Garry Stewart ("Stewart"). Relying upon Ford's testimony, the ALJ found Waters could perform the jobs of ticket seller and fast food worker. As a result, the ALJ determined Waters was not disabled during the relevant period. (Tr. 20-30).

**Error in Assigning Oberlander's Opinion Little Weight:**

The medical records reflect Oberlander, a neurologist, treated Waters five times during the relevant period for disability purposes, and five times prior to the alleged onset date. The treatment spanned the period from January 23, 2014, to August 1, 2016. (Tr. 217-239, 273-284). Oberlander opined on three occasions[1] that Waters could not work. Waters urges the ALJ erred in assigning little weight to these opinions.

The ALJ found Oberlander's opinion was "not supported by the objective medical evidence, physical examinations, or the conservative treatment received" by Waters. (Tr. 26). The ALJ's treatment of Oberlander's opinions is supported by substantial evidence.

The objective medical evidence, both in Oberlander's treatment notes and in reports written by consultative examiners Barnett and Stewart, is at odds with the opinions rendered by Oberlander. Oberlander's notes show that Waters was treated for back and neck pain. Oberlander consistently

---

[1] On April 20, 2015, Oberlander included in his treatment notes "I feel disabled at this juncture." (Tr. 222). On April 18, 2016, Oberlander, citing chronic "back pain, quite severe," wrote Waters "cannot work at this juncture and needs food stamps per his history." (Tr. 280). On September 1, 2016, Oberlander again wrote "to whom it may concern," that he had observed a progression of Waters' problems over the years and that he found Waters to be "disabled from a neurological standpoint." (Tr. 273). Oberlander cited the problems of arthritic spine and shoulders, worsening pain, abnormal gait, neck and low back spasms, and fibromyalgia. (Tr. 273).

4

assessed Waters with "a history of neck pain" which was worsening "per his report." (Tr. 219, 222, 225, 228, 231, 239, 275, 278, and 282). Oberlander consistently notes an abnormal gait, but does not diagnose hand problems[2] or anxiety attacks. Oberlander's plan of treatment was exclusively through medication, with the exception of an April 2016 visit when he decided to refer Waters "to pain management clinic for more aggressive interventions/injections/medication." (Tr. 278). Oberlander saw Waters on April 20, 2015, about twenty days after the alleged onset date, and noted the gait and pain were worsening. Oberlander prescribed Neurontin, Naproxyn, and Hydrocodone, and directed that Waters be seen again in a few months. (Tr. 222). Specific functional limitations were not noted by Oberlander.

In the months after Oberlander first opined Waters was disabled, Waters was seen by Stewart and Barnett. Stewart, who examined Waters in July 2015, found him to have normal range of motion in his shoulders, elbows, wrists, hands, hips, knees, and ankles. Similarly, Stewart found normal range of motion in Waters' cervical and lumbar spine, and normal grip strength in both hands. Stewart diagnosed Waters with tobacco abuse and mild to moderate obesity, and found he had no limitations in his ability to walk, stand, sit, lift, carry, handle, finger, see, hear, and speak. (Tr. 240-250).

Barnett, the orthopedic physician, examined Waters in September 2015. His examination included a review of x-rays of the lumbar and cervical spine. Barnett found Waters to have normal range of motion in his cervical and lumbar spine, as well as in his upper and lower extremities. (Tr. 261). In pertinent part, Barnett reported:

---

[2] Waters' motor skills were assessed by Oberlander as showing "normal bulk and tone in the upper and lower extremities. Strength is 5/5 in the upper and lower extremities. There are no abnormal movements observed." (Tr. 219, 222, 225, 228, 231, 239, 275, 278, and 282).

5

> He complains of generalized tenderness about the many areas of his musculature, from his neck, shoulders, thoracic, scapular, lumbar, knee, hips, and pelvic areas posteriorly. There is, however, no noted swelling of any of these joints. There is no noted instability or redness. I cannot localize any point tenderness, and he walks with a normal gait. His strength is good and symmetric. His reflexes are very easily obtainable and are symmetric. Sensation is intact, and he has no tension signs related to his straight leg raising test or neck.
> Essentially he complains of neck pain, postop back pain, plantar fasciitis, and generalized discomfort, which is in keeping with his diagnosis of fibromyalgia. His physical findings are limited to his scar on his back, tenderness in his foot, the well healed postoperative incision on his back, and his left quadriceps being 1 cm smaller than his right, as measured. Additionally, he does have a trigger finger. . .
> His lumbar spine x-rays show very mild curvature which is compensated with a reverse curve in his thoracic spine, giving him minimal and what is felt to be relatively insignificant scoliosis. He does have lumbarization of his S1 vertebral body with some minor degenerative changes here, but once again this is felt to be of questionable significance related to any pain syndrome.
> His thoracic x-rays were very much normal, with a minimal degree of increased kyphosis.
> AP and lateral of his cervical spine also show some minimal mid cervical abnormality, felt to be degenerative in nature.
> I have reviewed his previous report from 10-20-15 and feel that the x-ray findings do not contribute greatly to his findings overall, and I do not see any specific area on his x-rays that I would feel is a major contributor to his pain syndrome.

(Tr. 260, 265-66).

Waters is correct that a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. However, Oberlander's opinions may be discounted or even disregarded where other medical assessments are supported by better or more thorough medical evidence. *Fentress v. Berryhill*, 854 F.3d 1016 (8th Cir. 2017). The consultative examinations by Stewart and Barnett both contain detailed objective findings regarding Waters' range of motion. In particular, Barnett's findings are to be credited since he is a specialist in orthopedics. Substantial evidence supports the ALJ's treatment of Oberlander's conclusion that Waters was disabled. Given the medical evidence contradicting Oberlander, there was no error in the ALJ's decision in this regard.

6

**Error in Determining RFC:** Waters faults the ALJ, arguing that it was wrong to reject Oberlander's opinions and base the RFC determination on either the "vague or nonexistent opinions" of Stewart and Barnett or upon the opinions of nontreating, nonexamining physicians. Docket entry no. 11, page 16. Waters also contends the findings of Stewart and Barnett are defective because they do not contain an RFC finding therein.

There is no error in the RFC conclusion reached by the ALJ. Stewart and Barnett's findings were not vague or nonexistent. As previously stated, both of these examining physicians made specific findings about Waters' range of motion. Further, both physicians found no evidence which agreed with Oberlander's opinions. Stewart's finding that Waters could perform mild to moderate activity is a clear example. Barnett's specific findings, contained in the quoted portion of his notes above, also contrast with Oberlander's opinions. While it is true that neither Stewart nor Barnett provided an RFC opinion, that is not their role. The ALJ is not obligated to obtain RFC opinions from the various physicians and choose among them, as it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Substantial evidence, including the essentially normal findings of Stewart and Barnett, supports the ALJ's RFC formulation.

In addition, Waters is in error in contending that the ALJ rested his RFC determination on the findings of the nontreating, nonexamining state agency physicians. The ALJ explicitly found the medical evidence "supports the conclusion that the claimant is more limited than determined by the state agency experts." (Tr. 28). Therefore, this argument is without merit.

**Inadequate Credibility Evaluation:**

Waters claims the ALJ's credibility analysis was cursory, and failed to consider his daily activities or his work history. The ALJ noted that he was not required to accept Waters' assertions at face value, but was to consider them in light of other factors, such as his daily activities, the nature of the symptoms, precipitating and aggravating factors, medications and any side effects, and other treatment followed and measures used to relieve the symptoms. (Tr. 25). In reaching his credibility conclusion, the ALJ focused primarily on the objective medical evidence and how it was at odds with Waters' testimony. For example, Waters testified to having been seen by "doctor after doctor" for an anxiety disorder, but there was no evidence of any such diagnosis or treatment. (Tr. 47). Also, the medical record did not support Waters' testimony that a shoulder replacement would occur in the near future. Finally, Waters stated he had arthritis in his hands, but the medical records reflect only a diagnosis of trigger finger in his right third finger. These observations by the ALJ are valid reasons supporting his credibility analysis. In addition to these findings, the ALJ noted Waters was able to ambulate without an assistive device and had normal range of motion in his extremities. These findings suggest an ability to perform some daily activities greater than the ability to sit and watch movies, per Waters' hearing testimony. In summary, the ALJ cited the relevant factors he considered and did not discount Waters' testimony based solely on the objective medical evidence. When, as here, an ALJ discredits "a claimant's testimony and gives a good reason for doing so," then that credibility determination is given deference. *Wildman v. Astrue*, 596 F.3d 959 (8th Cir. 2010). Waters is correct that the ALJ failed to mention his work history, but the ALJ need not explicitly discuss each relevant factor. *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005). Substantial evidence supports the ALJ's credibility determination, and Waters' argument to the contrary is without merit.

In summary, we find the ultimate decision of Berryhill was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Waters' complaint is dismissed with prejudice.

IT IS SO ORDERED this 4th day of December, 2017.

_____
UNITED STATES MAGISTRATE JUDGE